# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF MASSACHUSETTS

MAYA HAYUK,

               Plaintiff,

    v.

URBAN OUTFITTERS, INC., and
NEW NAME, INC.

               Defendants.

Civil Action No. 09-cv-11281 RGS

## PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR VENUE

The plaintiff, Ms. Maya Hayuk ("Plaintiff"), respectfully requests that the Court deny the motion to dismiss for lack of personal jurisdiction and/or venue filed by defendants Urban Outfitters, Inc. ("Urban Outfitters") and New Name, Inc. ("New Name") (collectively "Defendants"). The Defendants admit that the T-shirts at issue, which New Name distributed to Urban Outfitters, were physically sold within the Commonwealth of Massachusetts out of brick-and-mortar Urban Outfitters stores. This Court clearly has jurisdiction over Urban Outfitters — which quite literally conducts business in Massachusetts out of its five Massachusetts stores — because it sold the infringing T-shirts within the Commonwealth. The Court also has jurisdiction over New Name, who created and distributed the infringing T-shirts that were sold in Massachusetts.

In the alternative, the Plaintiff respectfully requests limited jurisdictional discovery in the event that the Court requires additional facts to support a finding of jurisdiction.

Finally, if the Court determines that it may only exercise jurisdiction over Urban Outfitters, the case may proceed without New Name because joint tortfeasors are never Rule 19 indispensable parties.

**BACKGROUND**

This case involves the infringement of Ms. Hayuk's copyrights in her original artworks, including her work *Pilgrim*. Ms Hayuk is an artist who makes her living by creating, selling, and licensing original works of art. Her work, which is held in high regard in the artistic community, has also found commercial success, as she has been able to command premium royalties for licensing her works in connection with apparel, electronics, and sporting goods. *See* Hayuk Decl. ¶ 1.

Particularly popular is Ms. Hayuk's artwork entitled *Pilgrim*, which has been featured in numerous print and online publications. *Pilgrim* has been registered with the United States Copyright Office. *See* Hayuk Declaration, ¶ 2 and Ex. B.

Urban Outfitters is a large corporation, whose business consists of the retail sales of clothing and home wares. Urban Outfitters' agent, Mr. Kevin Lyons, approached Ms. Hayuk wanting to license her artwork for use in connection with Urban Outfitters' products, including apparel. Ms. Hayuk respectfully declined because she was concerned that the exposure she would receive would be harmful to her career. Mr. Lyons assured her that Urban Outfitters respected her decision, and agreed that the exposure Urban Outfitters was offering may indeed be harmful to the career of a more established artist, such as Ms. Hayuk. *See* Hayuk Decl., ¶ 4, and Ex. D.

Given Mr. Lyons representation, Ms. Hayuk was understandably shocked when she learned that Urban Outfitters was selling a T-shirt called the "Panic Rainbow Deep Vee Tee"

("Panic Rainbow T-shirt") which incorporated her copyrighted artwork. By way of comparison, an image of Ms. Hayuk's *Pilgrim* is below on the left, and the infringing Panic Rainbow T-shirt is below on the right.




Upon learning of this infringement, Ms. Hayuk contacted her counsel, Mr. Aaron Silverstein, a Massachusetts-based attorney who has represented her in connection with her intellectual property for the past four and a half years. Since Plaintiff's counsel, and not Ms. Hayuk herself, would be doing the majority of work in litigation, Plaintiff determined that it would be more efficient to litigate in counsel's home jurisdiction of Massachusetts.

The complaint was filed only against Urban Outfitters, as the Plaintiff had no knowledge of New Name's involvement in the infringement. After the case was initiated, counsel for

Defendants alerted the Plaintiff of New Name's role in this case, at which time the First Amended Complaint was filed, adding New Name as a defendant.

## Defendants' Contacts with Massachusetts

Defendant Urban Outfitters has significant contacts with Massachusetts, as it quite literally does business within the commonwealth out of five Massachusetts retail stores, which are located at Newbury Street, Fanueil Hall, Harvard Square, Dedham, and Nothampton. *See* Sutherland Decl. ¶ 4 and Ex. B. Urban Outfitters is also registered to do business in Massachusetts and has appointed a registered agent within the commonwealth. *See* Sutherland Decl. ¶ 3 and Ex. A.

Of particular importance, the infringing Panic Rainbow T-shirt was sold in Massachusetts. *See* Saunders Decl. ¶ 3, and Exs. A and B (documenting a Panic Rainbow T-shirt purchased in Massachusetts). Defendants have admitted as much, and make no effort to contest the allegation that the infringing product was sold in the Commonwealth.

Given Urban Outfitters' significant retail presence in Massachusetts, it unsurprisingly has numerous other contacts with the Commonwealth. The five Massachusetts storefronts employ Massachusetts residents, and Urban Outfitters ships significant quantities of merchandise into the Commonwealth to stock the shelves of these stores. *See* Sutherland Decl. ¶ 4; Kyees Decl. ¶ 7 (admitting that Urban Outfitters ships products to its retail locations). While specific data is unavailable, it is reasonable to presume that Urban Outfitters makes significant sales and derives significant revenue from its commercial activities within Massachusetts. It is also reasonable to presume that Urban Outfitters has bank accounts in Massachusetts, pays Massachusetts tax, and conducts other activities incidental to running a major retail enterprise within the Commonwealth.

Urban Outfitters also advertises within Massachusetts, and distributes catalogs to Massachusetts residents.  *See* Sutherland Decl. ¶ 5 and Ex. C.  For example, Urban Outfitters' "Early Fall 2009" catalog, attached as Sutherland Decl. Ex. C, has been sent to Massachusetts addressed to "Current Resident."  This catalog instructs Massachusetts residents to visit the local Urban Outfitters stores at Fanueil Hall, Newbury Street, and Harvard Square.  It also instructs Massachusetts residents to place orders for products via a toll-free phone number or through Urban Outfitters' Internet retail website www.urbanoutfitters.com.  *See* Sutherland Decl., Ex. C. At this retail website, Urban Outfitters offers numerous products for sale, which it will ship into Massachusetts at the request of a Massachusetts resident.  *See* Sutherland Decl., ¶ 6 and Ex. D (substantiating that www.urbanoutfitters.com will ship products into Massachusetts at the request of a Massachusetts resident).

With respect to defendant New Name, the Plaintiff's diligent search has uncovered less publicly available information.  New Name, however, has admitted the salient jurisdictional facts, that it manufactured the infringing Panic Rainbow T-shirt, and that it sold and distributed the T-shirt to Urban Outfitters, which Urban Outfitters sold in Massachusetts retail stores. *See* Keyser Decl., ¶ 9–10; Defendants' Memorandum at p. 5.

**ARGUMENT**

I.    **DEFENDANTS HAVE MINIMAL CONTACTS WITH MASSACHUSETTS SUFFICIENT TO SUPPORT JURISDICITON**

When jurisdiction is challenged, it is the plaintiff's burden of "making a prima facie showing of personal jurisdiction." *See Daynard v. Ness, Motley, Loadhold, Richard & Pool, P.C.*, 290 F.3d 42 (1st Cir. 2002).  In considering the evidence on a motion to dismiss, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purposes of determining the adequacy of the prima facie jurisdictional showing . . . irrespective of whether

the defendant disputes them, and in so doing, construe them in the light most congenial to the plaintiff's jurisdictional claim." *See Adelson v. Hanenel*, 510 F.3d 43, 48 (1st Cir. 2007).

In Massachusetts, the Court can "sidestep the statutory inquiry and proceed directly to the constitutional analysis" because the state's long-arm statute is coextensive with the limits allowed by the Constitution. *See Adelson*, 510 F.3d at 49 (internal citations omitted). The Due Process Clause requires that defendants have minimum contacts with Massachusetts, such that "maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954).

A.      **Urban Outfitters Is Doing Business In Massachusetts, and Thus Subject to General Jurisdiction**

Urban Outfitters' significant contacts to the Commonwealth of Massachusetts are more than sufficient to support this Court's exercise of general jurisdiction. Indeed, Urban Outfitters is quite literally doing business within the Commonwealth. Among others, Urban Outfitters' continuous and systematic contacts include:

- Being registered to do business in Massachusetts since 1987. *See* Sutherland Decl. Ex. A (Printout of Secretary of Commonwealth's website listing Urban Outfitters as a registered corporation);

- Having a registered agent within Massachusetts. *See* Sutherland Decl., Exs. A and E (appointing Corporation Service Company of Boston MA as its registered agent.);

- Owning and operating five brick-and-mortar retail locations in Massachusetts, namely the two Urban Outfitters stores in Boston, and the stores in Cambridge, Dedham, and Northampton. *See* Sutherland Decl., Ex. B (Printout from Urban Outfitters' website listing five Massachusetts locations);

- Employing numerous Massachusetts residents at its Massachusetts-based stores;

- Shipping substantial merchandise into the Commonwealth in order to stock its Massachusetts-based stores;

- Soliciting Massachusetts residents with advertisements and catalogs within the Commonwealth. *See* Sutherland Decl., Ex. C (Copy of the Urban Outfitters Early Fall 2009 catalog, which was sent to a Massachusetts resident, instructing the recipient how to

place orders by phone or the internet, and directs customers to its Massachusetts stores and e-commerce website);

- Operating an interactive e-commerce retail store through its Internet website, www.urbanoutfitters.com, which holds itself out to do business with Massachusetts residents and which ships merchandise into Massachusetts. *See* Sutherland Decl., Ex. D (Copy of an actual order placed through the www.urbanoutfitters.com, illustrating that Urban Outfitters will ship purchased merchandise into Massachusetts).

Given this expansive level of commercial activity in Massachusetts, it is reasonable to presume that Urban Outfitters derives significant sales and revenue from Massachusetts, that it pays Massachusetts tax, that it has Massachusetts bank accounts, and that it makes significant advertising expenditures within the Commonwealth.

Massachusetts Courts have found general jurisdiction over defendants with fewer contacts than Urban Outfitters. For example, in *Mass. Institute of Tech. v. Micron Technology, Inc.*, 508 F.Supp.2d 112 (D. Mass. 2007), the Court found general jurisdiction over defendant Micron — which had no office, place of business, manufacturing facilities, bank accounts, real property, nor any other asset in the Commonwealth — due to the presence of a registered agent, Micron's large sales volume, and its other sales activities within Massachusetts. *Id.* at 117, 121–123. In addition to the contacts found to be continuous and systematic in *MIT*, Urban Outfitters has many the contacts that Micron lacked, such as Massachusetts storefronts, employees, and advertisements directed at the Commonwealth.

Moreover, contrary to Urban Outfitters' arguments, the proper inquiry is whether its contacts are continuous and systematic — not what percentage those contacts make up of Urban Outfitters' overall business. *See Mass. Institute of Tech.*, 508 F.Supp.2d at 121–22 (finding general jurisdiction despite the fact that Massachusetts sales volume made up less than 1% of defendant's total sales); *3M Innovative Props. Co. v. InFocus Corp.*, 2005 WL 361494, *3 (D. Minn. 2005) (finding jurisdiction even though defendant's $3.8 million in sales made up only

.64% its total sales).  Similarly, the fact that Urban Outfitters does business in other states does not exempt it from jurisdiction in Massachusetts, when it is clearly doing business here as well.[1]

**B.**    **Specific Jurisdiction Is Proper Due to Urban Outfitters' Sale of Infringing T-Shirts within the Commonwealth**

The fact that Urban Outfitters sold the infringing T-shirt in Massachusetts — a fact Urban Outfitters admits — is a sufficient basis to support specific jurisdiction.  For the Court to have specific jurisdiction, the plaintiff need only prove that Urban Outfitters' minimal contacts with Massachusetts are related to Ms. Hayuk's copyright infringement and represent a purposeful availment of the Massachusetts form.

To satisfy the relatedness prong of personal jurisdiction, "the claim in the underlying litigation must directly arise out of, or relate to, the defendant's form-state activities."  *Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994).  Here Plaintiff's claim arises out of the copyright statute, which states that it is an infringement to violate the exclusive rights of a copyright owner, including the right to "distribute copies . . . of the copyrighted work to the public by sale . . . ."  17 U.S.C. § 501.  Thus, Urban Outfitter's sale of the infringing Panic Rainbow T-shirts in Massachusetts is an infringement of Ms. Hayuk's copyright, and a sufficient and independent basis of Ms. Hayuk's claim in suit.

Given that Urban Outfitters sold the infringing T-shirts within Massachusetts, the relatedness prong of specific jurisdiction is clearly met, as Ms. Hayuk's cause of action directly

---

[1]  Contrary to Defendants' argument, *Miele v. Blockbuster, Inc.* and *Matosantos Commercial Co. v. Applebee's International, Inc.* do not support the perverse proposition that national chains are immune from jurisdiction in states where they are literally doing business.  First, in *Miele*, it is unclear from the court's opinion that the defendant was in fact the video rental chain Blockbuster, and there is also no indication that the defendant operated any stores within Texas.  In any event the court is clear that there was no jurisdictional evidence before it because the plaintiff "relie[d] exclusively on the forum selection clause of the Acquisition Agreement. . . ."  *Miele v. Blockbuster Inc.*  Similarly, in *Matosantos* the only jurisdictional evidence offered was that the defendant provided limited training services and a consultation regarding use of a trademark, which the court found insufficient for general personal jurisdiction.  *See Matosantos Commercial Co. v. Applebee's International, Inc.*, 2 F.Supp.2d 191, 196 (D.P.R. 1998).

arises out of this Massachusetts activity. *See Angela Adams Licensing, LLC v. Dynamic Rugs, Inc.*, 463 F.Supp.2d 82, 85 (D. ME 2006) (holding that shipping an infringing rug into the jurisdiction met relatedness standard for copyright infringement claim).

Urban Outfitters has also purposefully availed itself of the Massachusetts forum by shipping infringing T-shirts to Massachusetts, and selling those T-shirts at its Massachusetts Urban Outfitters locations. Selling infringing shirts out of its own retail locations is certainly a voluntary action, and it is foreseeable that it could be called to answer in Massachusetts for infringing products it sold within the Commonwealth. *See Angela Adams Licensing*, 463 F.Supp.2d at 85 (holding that marketing rugs accused of copyright infringement in the forum was a purposeful availment); *Annalee Mobilitee Dolls, Inc. v. Sterling Supply Co., Inc.*, 1995 WL 674619, *3 (D.N.H. 1995) (holding that the offer to sell infringing dolls in forum is "a purposeful invocation by [the defendant] of the benefits and protections provided by New Hampshire").

Moreover, Urban Outfitters cannot dodge specific jurisdiction in Massachusetts on the theory that it also infringes Ms. Hayuk's copyrights in other jurisdictions as well. "A single act of infringement in [the forum] is enough to confer specific jurisdiction over an infringement claim." *Angela Adams Licensing*, 463 F.Supp.2d at 85 (finding that the defendant's limited sales within the forum were irrelevant to specific jurisdiction).

C.     **This Court has Specific Jurisdiction Over New Name Due to Its Distributing of Infringing T-Shirts to Urban Outfitters, a Massachusetts Retailer**

This Court has specific jurisdiction over New Name because the infringing T-shirts it manufactured and distributed to Urban Outfitters were sold in Massachusetts Urban Outfitters stores. *See Angela Adams Licensing*, 463 F.Supp.2d at 85 (selling infringing products to in-forum retailers would be sufficient for a finding of specific jurisdiction).

To satisfy the relatedness prong of personal jurisdiction, "the claim in the underlying litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994). Relatedness is satisfied because New Name's connection to Massachusetts — the sale within the Commonwealth of infringing T-shirts New Name manufactured — gives rise to the claim that New Name infringed Ms. Hayuk's copyright. *See* 17 U.S.C. §§ 106, 501 (distribution and sale of copyrighted work is an infringement of copyright).

Indeed, the fact that New Name may have infringed Ms. Hayuk's copyright elsewhere as well does not change the fact that the copyright infringement that took place in Massachusetts is related to Ms. Hayuk's cause of action and minimal contact sufficient for jurisdiction. In any event, New Name cannot pretend that these Massachusetts sales did not take place in order to support an argument that jurisdiction may also be proper in another forum.

New Name also purposefully availed itself of the Massachusetts forum by selling the infringing T-shirts to a Massachusetts retailer in Urban Outfitters. New Name voluntarily agreed to supply infringing T-shirts to Urban Outfitters retail stores, including those stores in Massachusetts. It is also foreseeable that it would be called to account in Massachusetts for the copyright infringements it perpetrated in the Commonwealth. *See Angela Adams Licensing*, 463 F.Supp.2d at 85 (holding that marking and selling the infringing goods satisfies purposeful availment).

Notably, New Name's sale and distribution of infringing T-shirts to Urban Outfitters was an "A to B" transaction that effected Massachusetts. There were no independent distributors, the T-shirts were never resold, and there was no "stream of commerce" of any type. Urban Outfitters is not a third party to this transaction; it is New Name's customer and the recipient of

New Name's distribution of infringing materials. Thus, Urban Outfitters' selling the infringing T-shirts at retail in Massachusetts is not an independent act by a third party, so New Name may not rely upon Urban Outfitters to shield it from answering for the copyright infringement it perpetrated in Massachusetts.

Moreover, the mere fact that the infringing T-shirts may have made a brief layover at Urban Outfitters' warehouse while en route to its stores in Massachusetts does not impair this Court's jurisdiction. "If *International Shoe* stands for anything . . . it is that a truly interstate business cannot shield itself from suit by a careful and formalistic structuring of its business dealings." *Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 30 (1st Cir. 1988) ("Every state to our knowledge permits its citizens to bring tort actions against foreign manufactures who send defective products into their jurisdiction).

**D.      The Plaintiff Requests Jurisdictional Discovery in the Event that The Court Finds the Record Insufficient to Support Jurisdiction Against Either Defendant**

While the Plaintiff believes that the record contains ample evidence to support jurisdiction over Defendants, she respectfully requests limited jurisdictional discovery should the Court require more factual support. Courts may grant jurisdictional discovery where a colorable case may be made for the existence of personal jurisdiction. *See U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001). The fact that Defendants are selling infringing goods within Massachusetts is at least sufficient to support a colorable claim to jurisdiction, thus entitling the Plaintiff to discover the relevant details of the Defendants' activities. *See Cathedral Art Metal Co. v. Giftco, Inc.*, 2008 WL 3982466, *1–2 (D.R.I 2008) (granting jurisdictional discovery on the allegation that defendants offered infringing products for sale in the forum).

In particular, in the unlikely even that more evidence is required to support jurisdiction against Urban Outfitters, the Plaintiff expects that limited jurisdictional discovery will substantiate the reasonable inferences plaintiff has drawn with respect to numerous topics, including but not limited to, the amount of sales in Massachusetts, advertising expenditures in Massachusetts, total employees in Massachusetts, amount of tax Urban Outfitter pays to Massachusetts, whether Urban Outfitters owns real property in Massachusetts, among others. Moreover, given Urban Outfitters expansive business interests in Massachusetts, it is reasonable to expect that discovery will uncover other contacts with this forum, such as business trips by executive to Massachusetts, goods purchased from Massachusetts suppliers, and the like.

In addition, the Plaintiff expects that jurisdictional discovery will uncover relevant information regarding New Name's Massachusetts contacts which is not otherwise publicly available. Information including the terms of its relationship with Urban Outfitters, documents detailing its intentions with respect to placing its products in Massachusetts, and other connections with Massachusetts residents and the commonwealth. Plaintiff is also entitled to test the unsupported allegations set forth in the Keysor declaration. *Cf. Cathedral Art* 2008 WL at * 5 (noting that defendant's initial claims that it had no ties to the forum were belied by the evidence unveiled during jurisdictional discovery).

### III. THE EXERCISE OF THIS COURT'S JURISDICTION OVER URBAN OUTFITTERS AND NEW NAME IS REASONABLE

Because the Defendants have committed copyright infringement in Massachusetts by selling infringing T-shirts within the Commonwealth, it is reasonable for the Court to exercise jurisdiction over Urban Outfitters and New Name. In assessing reasonableness, Courts consider the following five "gestalt" factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the judicial systems interest in obtaining the most efficient resolution to the controversy; and

(5) the common interest of the states in furthering substantive social policies. *See Pritzker v. Yari*, 42 F.3d 53, 63 (1st Cir. 1994). Courts, however, have cautioned that "the gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist." *Cambridge Literary Prop. Ltd., v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg*, 295 F.3d 59, 66 (1st Cir. 2002). Consequently, "there is a heavy burden on the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Mass. Institute of Tech. v. Micron Tech, Inc.*, 508 F.Supp.2d 112, 124 (D. Mass. 2007) *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### A. The Defendants have Not Met Their Burden to Prove that It would be Particularly Burdensome to Defend Themselves in Massachusetts

Defending this case in Massachusetts will not cause Defendants any inconvenience that is "onerous in a special, unusual, or other constitutionally significant way." *See Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994). "[T]he concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Id*. at 64 (holding that travel from New York to Puerto Rico was not specially burdensome in a constitutionally significant way); *see also Adelson v. Hananel*, 501 F.3d 43, 51 (1st Cir. 2007) (holding no special or unusual burden existed that would exclude legally blind, diabetic, Israeli resident from being subject to jurisdiction in Massachusetts).

Defendants have provided no evidence that they will suffer any special or unusual burden in defending this case in Massachusetts. *See Breckenridge Pharma., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006) (holding that a general assertion of hardship, unsupported by evidence, was unpersuasive). Defendants' conclusory allegations of

inconvenience only relate to the common inconveniences that come part and parcel with litigation of any sort — such as inconvenience to employees, disruption of work schedules, and the like. These pedestrian inconveniences would result even if the Defendants were litigating at home. *See Gray v. St. Martin's Press, Inc.*, 929 F.Supp. 40, 49 (D.N.H. 1996) ("the cost of defending would be roughly similar were [defendant] haled into court in any forum, convenient or not."); *Breckenridge Pharma.*, 444 F.3d at 1367 (Fed. Cir. 2006) (declining to credit a conclusory assertion that defense in a foreign jurisdiction would disrupt an "active research laboratory and other personal and professional commitments").

With respect to Urban Outfitters in particular, it is difficult to understand how litigating in Massachusetts could be unconstitutionally inconvenient. In addition to its significant business presence in Massachusetts, Urban Outfitters is headquartered in Philadelphia Pennsylvania, which is not that far from Massachusetts, and certainly not far enough to raise inconvenience to constitutional dimensions. *See Bartow v. Extec Screens & Crushers, Ltd.*, 53 F.Supp.2d 518, 528 (D. Mass. 1999) ("Extec's claim of burden by appearing in Massachusetts, because Rent-A-Screen is located in Pennsylvania, simply fails to qualify as a burden of constitutional significance."); *Mass. Institute of Tech.*, 508 F.Supp.2d at 124 ("for a company like Micron, which is a worldwide leader in its area of business and has operations in various states as well as overseas, the added cost and inconvenience of litigating this matter in Massachusetts is not significant enough to defeat jurisdiction.").

Importantly, the Defendants have provided no evidence that Massachusetts was chosen to "vex," "harass," or "oppress" either defendant. Indeed, given that the Plaintiff had no knowledge that New Name was implicated in the infringement until <u>after</u> suit was commenced in Massachusetts, it could not possibly have been calculated to inconvenience New Name. To the

contrary, the record shows that Ms. Hayuk chose to proceed with her case in Massachusetts because her long-time intellectual property counsel, Mr. Aaron Silverstein, is based in the Commonwealth. Hayuk Decl., ¶ 6. Since most of the work in a legal proceeding will be done by counsel and not by Ms. Hayuk herself, it is quite simply more efficient and cost effective to proceed in counsel's home jurisdiction of Massachusetts. *See* Hayuk Decl., ¶ 7.

The lack of any motivation to vex, harass, or oppress the Defendants distinguishes this case from *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994). In *Ticketmaster*, the First Circuit clearly believed that the suit was brought to harass the defendant with an inconvenient forum, and used the reasonableness factors as a "talisman to ward off" such conduct. *See, e.g., Id*. at 211 ("If appellant in fact filed suit primarily to retaliate . . . rather than right an independent wrong — and as previously mentioned there are some clues in the record that could lead to such a deduction — the Commonwealth's interest would be much diminished"). The specter of harassment pushed the first three gestalt factors against plaintiff Ticketmaster, toward the ultimate finding of unreasonableness. Here, however, where the specter of harassment is no more than a baseless boogeyman conjured by the Defendants, and where they have not even proven that they will be inconvenienced, the stern language of *Ticketmaster* is inapplicable. *See Scott v. Jones*, 984 F.Supp. 37, 45 (D. ME., 1997) (declining to find first gestalt factor determinative where "record demonstrates neither special burdens nor harassment).

**B.      Massachusetts has an Interest in Preventing the Infringement of Intellectual Property within Its Borders and Providing Massachusetts Based Counsel a Convenient Forum**

Massachusetts has a legitimate interest is in preventing the infringement of intellectual property within its borders, and giving individuals a forum to redress those infringements.

*See JKA, Inc. v. Anisa Intern. Inc.*, 2008 WL 4949126 (D.R.I. 2008) (holding, in a patent infringement case, that "Rhode Island has an interest in discouraging alien and nonresident manufacturers from using this state as a conduit for distributing infringing products"); *Cf. Faigin v. Kelly*, 919 F.Supp. 526, 533 (D.N.H. 1996) (finding that the state has a significant interest in protecting non-residents against being libeled within its borders).

Massachusetts also has an interest in providing Massachusetts-based attorneys a convenient forum to assist clients in efficiently litigating disputes. Importantly, this is not a case where an out-of-state plaintiff hired local counsel in order to obtain a strategic advantage by litigating in Massachusetts. Instead, the record demonstrates that Ms. Hayuk, an individual artist, retained longtime intellectual property counsel, who happened to be based in Massachusetts. In these circumstances, Massachusetts has an interest in providing its attorneys a convenient forum.

### C. Ms. Hayuk has an Interest in Litigating in the Most Convenient Forum for Her, which Is Massachusetts

The most convenient forum for Ms. Hayuk is Massachusetts because it is most efficient for her to litigate where her long-time intellectual property counsel is located. Mr. Silverstein has counseled the Plaintiff with respect to her intellectual property since 2004. She trusts his judgment and advice. *See* Hayuk Decl., ¶ 6. It is perfectly reasonable for the Plaintiff to select Mr. Silverstein as counsel in this matter, and it is perfectly reasonable for her to initiate suit where she can most efficiently seek redress of the harm Defendants' infringement has caused.

It is well settled that, when assessing this gestalt factor, courts must pay deference to the Plaintiff's choice of forum. *See Pritzker v. Yari*, 42 F.3d 53, 64 ("Not only must we accord plaintiff's choice of forum a degree of deference in respect to the issue of his own convenience, but also we must take note of the enormous inconvenience that might result from forcing

plaintiff to sue elsewhere" (internal citations omitted)).  Contrary to defendant's arguments, there

is no rule that would require the Plaintiff to litigate in her home state, or prevent the Court from

considering that it may in fact be more convenient for the out-of-state Plaintiff to litigate where

counsel is located.  *See Faigin v. Kelly*, 919 F.Supp. 526, 533 (D.N.H. 1996) (paying deference

to a California residents choice of New Hampshire as a forum).[2]

**D.    The Efficient Administration of Justice Weighs Against Dismissing the Case Only to have It Re-filed in a Jurisdiction that would Redistribute the Inconvenience**

Considerations of the efficient administration of justice weigh against dismissing this

suit, only to redistribute the inconvenience by having the case refiled in another jurisdiction.  As

is to be expected in a case involving parties, witnesses, and evidence spread around the United

States, there is no single convenient forum in which to resolve this controversy.  Thus,

dismissing this suit would only reshuffle the inconvenience between the parties and waste the

resources and efforts already committed to resolving this action.

For similar reasons, the fact that evidence or witnesses exist outside of Massachusetts

does not weigh in favor of finding that jurisdiction in Massachusetts is unreasonable.  First,

Defendants ignore the fact that there are witnesses in Massachusetts, namely Urban Outfitters'

Massachusetts employees who witnessed the infringing sales.  Second, advances in the methods

of producing discovery documents as electronic data files has greatly decreased the

inconvenience associated with distant evidence.  *Cf. Mass. Institute of Tech.*, 508 F.Supp.2d at

124 (minimizing concern that witnesses and evidence are not located in Massachusetts because

"progress in communications and transportation has made the defense of a suit in a foreign

---

[2] The Defendants' reliance on *Phillips v. Prairie Eye Center*, 530 F.3d 22 (1st Cir. 2008), is misplaced. First, the *Phillips* court had already determined that the defendant had not purposefully availed itself of the forum, so its discussion of the reasonableness factors is *dicta*.  In any event, it does not appear that the plaintiff offered any rational for why his convenience was served by Massachusetts, let alone a rational as reasonable as the one offered by Ms. Hayuk.

tribunal less burdensome.").  Finally, like with the parties, there is no convenient location for all the witnesses and evidence, so any change of forum would merely redistribute the inconvenience.

### E.  Considerations of Fairness Support Finding Jurisdiction over Defendants

It is appropriate for the Court to consider the ultimate fairness and balance of equities in making its ruling on jurisdiction.  *See Ticketmaster-New York*, 26 F.3d at 212 (gestalt factors are a tool for the court to assess the relevant equities).  Here, the equities tip strongly in favor of the Ms. Hayuk, as the Defendants are trying to do little more than avoid answering the bell in a forum where they willfully perpetrated copyright infringement by selling infringing goods.  Moreover, their fundamental argument is that they should not have to answer for their infringement in the forum most convenient to the Plaintiff because they have infringed the Plaintiff's copyrights in a lot of places.  Given these lopsided equities, finding jurisdiction will comport with considerations of fair play and substantial justice.

## V.  VENUE IN IS PROPER BECAUSE THE DEFENDANTS ARE FOUND WITHIN THE COMMONWEALTH

Pursuant to the Copyright venue statue, "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  "Courts have consistently held that for the purposes of establishing venue under Section 1400(a), defendants 'may be found' in any jurisdiction in which personal jurisdiction may be asserted against them."  *Crosfield Hastech, Inc. v. Harris Corp.*, 672 F.Supp. 580, 588 (D.N.H. 1987).[3]

---

[3] Plaintiff notes that Defendants recitation of Section 1400(a) is clearly inaccurate, as venue is appropriate not only where the Defendant "resides," but also where they are "found."  In any event, Urban Outfitters also "resides" in Massachusetts because it is licensed to do business in the Commonwealth.

For the reasons argued above, the Court has personal jurisdiction over the Defendants, and thus they "may be found" in Massachusetts. Consequently venue is proper pursuant to Section 1400(a).

## VI. AS A JOINT TORTFEASOR, NEW NAME IS NOT AN INDISPENSABLE PARTY

Because Urban Outfitters and New Name are joint tortfeasors, this case should proceed in Massachusetts even if New Name is not available to be joined as a party. "Courts have long held in . . . copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor." *Costello Pub. Co. v. Rotelle*, 670 F.3d 1035, 1046 (D.C. Cir. 1981) (holding that district court abused its discretion in dismissing copyright infringement claim against the distributor even though creator of the infringing work could not be joined); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000) (holding that it is not within the discretion of the court to dismiss a copyright claim for failure to join a joint tortfeasor) *citing, among others,* 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1614, at 225 ("The question of who must be joined as defendants in . . . copyright . . . suits for infringement . . . is fairly easy to answer. A suit for [copyright] infringement may be analogized to other tort actions; all infringers are jointly and severally liable. Thus, plaintiff may choose those he wishes to sue and is not required to join all infringers in a single action.").

Indeed, as a joint tortfeasor, New Name is not even a necessary party under Rule 19(a), let alone one who is indispensable. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named defendants in a single lawsuit."). In *Temple*, the Supreme Court clarified that Rule 19 does not change the traditional principal that a plaintiff need not sue all tortfeasors, and endorsed the Advisory

Committee Note to Rule 19(a), which states that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court Deny Defendants' Motion to Dismiss for Lack of Jurisdiction and/or Venue. In the alternative, Plaintiff respectfully request that the Court grant limited jurisdictional discovery so the Plaintiff can gather additional facts to supplement its opposition.

Respectfully submitted,

Maya Hayuk

By her attorneys,

Dated: October 9, 2009
        Aaron Silverstein, Esq.
(BBO #660716)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
P: 978-463-9100
F: 978-463-9109
E: asilverstein@massiplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2009, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

 /s/ Aaron Silverstein

Aaron Silverstein