UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAYA HAYUK,<br><br>               Plaintiff,<br><br>   v.<br><br>URBAN OUTFITTERS, INC., and<br>NEW NAME, INC.<br><br>               Defendants. | Civil Action No. 09-cv-11281 RGS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS / SUMMARY JUDGMENT FOR LACK OF PERSONAL JURISDICTION OVER AN INDISPENSABLE PARTY AND SUMMARY ADJUDICATION ON LIMITATION FOR AWARD OF DAMAGES IN THE FORM OF DEFENDANTS' PROFITS**

      In its order of October 20, 2009, the Court ruled that the plaintiff, Ms. Maya Hayuk ("Hayuk") made a sufficient showing that she should be entitled to test her jurisdictional theory with discovery. Rather than comply with the Courts order in good faith, defendants Urban Outfitters, Inc. and New Name, Inc. (collectively "Defendants") <u>have not responded</u> to Hayuk's discovery requests relevant to jurisdiction before raising this issue again. Defendants' "renewed" motion does nothing more than rehash old arguments on the same record that was before the Court when it initially denied this motion six months ago. Therefore, Defendants' motion to dismiss for lack of jurisdiction should be denied with prejudice as an appropriate sanction for disregarding the Court's Order and wasting the Court's and Hayuk's time and resources.

      The Court should also deny Defendants' motion for summary judgment on damages because Defendants' lack of compliance with the discovery rules has left Hayuk unable to fully and fairly respond. To date, Defendants have produced a grand total of 145 pages of documents

(with Urban Outfitters contributing but a single page) and inadequate and incomplete interrogatory responses. Indeed, Defendants have not even allowed Hayuk the opportunity to depose the witnesses Defendants rely upon to support the majority of their alleged undisputed facts. Since Hayuk has not had a meaningful opportunity to take discovery on damages, Defendants' motion for summary judgment should be denied pursuant to Rule 56(f).

In sum, the present motion is a frivolous waste of the Court's and Hayuk's time. Defendants, who have already dragged their feet in discovery, are doing nothing more than throwing up a baseless roadblock to keep Hayuk from the discovery to which she is entitled. Indeed, Defendants' roadblock is particularly egregious because its arguments are, at their heart, self-defeating; they presuppose Hayuk has the discovery that Defendants seek to deny her. Thus, Hayuk respectfully requests that the Court deny Defendants' motions and award Hayuk attorneys fees as an appropriate sanction pursuant to Rule 56(g).

## BACKGROUND

Hayuk, a successful visual artist, was approached by Urban Outfitters, who wished to license her artwork for use on t-shirts and other house wears. Hayuk respectfully declined because, among other reasons, she was concerned that such exposure would harm her reputation as an artist. Urban Outfitters assured Hayuk that it would respect her wishes, but then proceeded to sell the "Panic Rainbow Deep Vee Tee ("Panic Rainbow t-shirt") which infringed Hayuk's original works of art, including a work of art titled *Pilgrim*. By way of comparison, Ms. Hayuk's *Pilgrim* is displayed below on the left, and the infringing Panic Rainbow T-Shirt is below on the right:

 

After being served the complaint, Defendants moved to dismiss for lack of personal jurisdiction, despite the fact that Urban Outfitters was quite literally doing business in the commonwealth by selling infringing t-shirts out of its five Massachusetts stores. In its order of October 20, 2009, the Court denied Defendants' motion to dismiss, holding that Plaintiff had presented enough evidence to test her jurisdictional theory with discovery.

Discovery opened on November 13, 2009, and Hayuk promptly served document requests and interrogatories on Defendants shortly thereafter on December 2, 2009. Hayuk agreed to allow Defendants to stagger their responses to insure that the parties would have the discovery they needed to prepare for mediation, which was scheduled on January 14, 2010. Importantly, Hayuk did not include discovery requests relevant to jurisdiction in those necessary

for the mediation and agreed to allow the Defendants extra time to respond to such requests. *See* Silverstein Decl. ¶ 4, Ex. E.

Before the mediation, Defendants produced a very small quantity of discovery, with objections to select interrogatories and document requests and a mere 145 pages of documents combined. For its part, Urban Outfitters only contributed a single page from its publicly available SEC filings, namely, a copy of its 10-Q statement for the first two quarters of 2009. *See* Silverstein Decl., ¶ 5.

On January 29, 2010, the parties stipulated to extend fact discovery until April 1, 2010. On February 27, 2010, the parties stipulated to further discovery extensions, ultimately giving Defendants until April 15, 2010 to respond to Hayuk's previously served Discovery Requests. *See* Silverstein Decl., ¶ 6, D.Nos. 32-33.

In another gesture of good faith and cooperation, Hayuk offered to take New Name's 30(b)(6) deposition and the deposition of the alleged designer of the infringing t-shirt in San Diego to minimize the burden on New Name. In the correspondence that followed, New Name continually dragged its feet for, despite multiple follow-up efforts from Hayuk. Given Defendants' lack of cooperation, Plaintiff was left with little choice other than to notice the 30(b)(6) depositions of New Name and Urban Outfitters. *See* Silverstein Decl., ¶¶ 7-8.

Given the fact that Defendants' discovery responses are due on April 15 (excluding Hayuk's second set of document requests and requests for admissions), depositions of Urban Outfitters have been noticed for April 20, 2010, and depositions of New Name have been noticed for April 21, 2010, Hayuk was quite surprised to receive the present motion. It was even more surprising given that Defendants had not contacted Hayuk before the filing to discuss ways to narrow the issues pursuant to Local Rule 7.1. After filing the motion, Defendants contacted

Hayuk seeking to stay discovery pending the Court's ruling on this motion. Given that Hayuk needs this discovery to respond on the merits to Defendants arguments, she declined to agree to any more extensions. In response, Defendants informed Hayuk that they would unilaterally withhold witnesses from deposition until the present motion was decided. *See* Silverstein Decl., ¶9.

## ARGUMENT

I. **THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE AS DEFENDANTS HAVE NOT COMPLIED WITH THE COURTS ORDER OF OCTOBER 20, 2009**

On October 20, 2009, the Court ruled that Plaintiff had presented enough jurisdictional evidence to allow the case to progress to discovery against both Defendants. The Court left open the opportunity for New Name to raise jurisdiction "if discovery does not bear Hayuk's theory . . . ." Implicit in this ruling is that New Name should not raise the jurisdictional issue until it produced discovery on that topic. Astonishingly, New Name has raised this issue again <u>before it has responded to a single discovery request directed to the issue of this Court's jurisdiction</u>. Given New Name's clear disregard of the Court's order, Hayuk respectfully requests that the Court deny with prejudice Defendants' motion to dismiss this action.[1]

It is disingenuous for New Name to claim that "discovery has revealed" no connection to Massachusetts when New Name has not responded to Hayuk's discovery requests designed to ferret out such facts. In particular, Hayuk's Interrogatories Nos. 17–21, Document Requests Nos. 19–25, and Request for Admissions Nos. 24–26 are directed toward exploring New Name's Massachusetts contacts. *See* Silverstein Decl., Exs. A–D. New Name has not responded (even

---

[1] Hayuk is treating the jurisdictional component of Defendants' motion as a motion to dismiss because summary judgment on jurisdiction is a logical contradiction. A finding that a court lacks competent jurisdiction rules out a determination on the merits of the case, which summary judgment would require.

5

to serve objections) to any of these interrogatories, document requests, or requests for admission. *See* Wagner Decl. (D.N. 40), Ex. A; Silverstein Decl., ¶ 4. Nor has New Name made available the necessary witnesses for Hayuk to depose in order to explore these facts. *See* Silverstein Decl., ¶ 9.

Defendants also have not provided discovery into the relationship between New Name and Urban Outfitters that might evidence a joint venture between Defendants. Neither defendant has provided any discovery into how the Panic Rainbow t-shirt was initially created or any correspondence prior to its creation. Furthermore, neither defendant has responded to their respective Interrogatory Nos. 2, 13, 14, each of which is pertinent to the relationship between the companies. *See* Wagner Decl. (D.N. 40), Exs. A, E.

Since Defendants have not responded to Hayuk's jurisdictional discovery requests, the record has not changed since the Court denied Defendants' motion six months ago. Indeed, paragraphs 1–10 of the present Keyser declaration — which contains the principal facts on which New Name relies for its renewed arguments — are identical to the same paragraphs in Keyser's declaration that the Court considered when it denied this motion the first time. *Compare* Keyser Decl. (D.N. 39) *with* Keyser Decl. (D.N. 15). Indeed, the record is not the only thing that is the same, as New Name has merely cut and pasted nearly all of its arguments from its earlier brief verbatim.

Given that the record and arguments have not changed since the Court denied this motion six months ago, Defendants' renewed motion is nothing more than an impermissible motion for reconsideration. *See, e.g., Antony v. Duty Free Americas, Inc.*, 2010 WL 1416514 (D. Mass. 2010) (Gorton, J.) ("In sum, [a party] is not entitled to another bite at the apple simply because the Court did not rule in his favor"; denying motion for reconsideration when not based on

change in law, existence of newly available evidence, or clear error of law made by the Court."). Indeed, Defendants' present motion for reconsideration is even more egregious than most because it is coupled with the disingenuous assertion that discovery has borne out their arguments <u>when Defendants have not provided any meaningful discovery into jurisdiction at all.</u> Thus, Hayuk respectfully requests the Court deny Defendants' renewed motion to dismiss with prejudice as an appropriate sanction for disregarding the Courts October 20, 2009 order and for wasting the Court's and Hayuk's time.

## II. AS A JOINT TORTFEASOR, NEW NAME IS NOT AN INDISPENSABLE PARTY

Because Urban Outfitters and New Name are joint tortfeasors,[2] this case should proceed in Massachusetts even if New Name is not available to be joined as a party.[3] "Courts have long held in . . . copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor." *Costello Pub. Co. v. Rotelle*, 670 F.3d 1035, 1046 (D.C. Cir. 1981) (holding that district court abused its discretion in dismissing copyright infringement claim against the distributor even though creator of the infringing work could not be joined); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000) (holding that it is not within the discretion of the court to dismiss a copyright claim for failure to join a joint tortfeasor) *citing*,

---

[2] Defendants are jointly and severally liable for Hayuk's direct and consequential damages, such as will be proven at trial. *See Sammons v. Colonial Press, Inc.*, 126 F.3d 341, 344 (1st Cir. 1942) ("Where the copyright owner can show as damages his probable losses resulting form an infringement, it is clear, on familiar principles of tort liability, that all persons who unite in the infringement are joint and severally liable for the damages resulting therefrom."). Defendants are also jointly liable because they are non-innocent infringers, and because they are engaged in a joint venture to infringe Hayuk's copyright. *Id*. (joint venturers jointly and severally liable infringers' profits).

[3] Defendants' claim that Plaintiff somehow conceded that New Name was indispensable by adding a permissible party to suit is patently ridiculous. Indeed, it is akin to Plaintiff making the over-the-top claim that Defendants admitted liability by requesting summary judgment on damages. The simple fact is that it is permissible to add a permissible party; Plaintiff admitted nothing by doing so.

*among others,* 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1614, at 225 ("The question of who must be joined as defendants in . . . copyright . . . suits for infringement . . . is fairly easy to answer. A suit for [copyright] infringement may be analogized to other tort actions; all infringers are jointly and severally liable. Thus, plaintiff may choose those he wishes to sue and is not required to join all infringers in a single action.").

Indeed, as a joint tortfeasor, New Name is not even a necessary party under Rule 19(a), let alone one who is indispensable. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (*per curium*) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named defendants in a single lawsuit."). In *Temple*, the Supreme Court clarified that Rule 19 does not change the traditional principal that a plaintiff need not sue all tortfeasors, and endorsed the Advisory Committee Note to Rule 19(a), which states that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Id.*

Contrary to Defendants' claims, the controlling precedent on the treatment of joint tortfeasors under Rule 19 is the Supreme Court decision in *Temple v. Synthes Corp.* Defendants' reliance on *H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987 (1st Cir. 1986) is misplaced, as *H.D. Corp* was decided in 1986, four years before the Supreme Court decided *Temple*. In any event, the First Circuit has never applied *H.D. Corp.* to require joinder of joint tortfeasors. *See Pujol v. Shearson American Express., Inc.*, 877 F.3d 132, 137 (1st Cir. 1989) (Breyer, J.) ("Yet, if one thing is clear with respect to Rule 19, it is that, unlike a person vicariously liable in tort . . . a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20"; distinguishing joint tortfeasors from joinder situation in *H.D. Corp.*).

8

Moreover, Defendants' arguments rest on the false premise that copyright infringement is an intentional tort, when in fact it is a strict liability offense. *See Costello Pub. Co.* 670 F.3d at 1044 and n. 13 ("Costello's good faith use of the materials would not insulate Costello, for intent is not an element of infringement, and the copyright holder may proceed against any member of the chain of distribution") (citing authorities for copyright as a strict liability offense). Since it is a stand-alone violation of copyright to distribute or sell infringing goods, Urban Outfitters is not absolved from its liability even if (for the sake of argument) the facts were to ultimately show that it had no knowledge of the copying. Similarly, New Name need not be a defendant for Plaintiff to prove copying took place and that Urban Outfitters profited from the infringement. *See Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 880 (7th Cir. 2004) ("When a plaintiff is harmed by the acts of several persons, all may be essential sources of evidence in a suit against any. But if this possibility automatically required that all be joined, the rule that joint tortfeasors are not by virtue of their jointness indispensable parties . . . would be overthrown"; denying motion to dismiss when party accused of doing the copying could not be jointed).

In addition, the alleged prejudice New Name claims does not outweigh the strong policy justifications supporting the rule that joint tortfeasors are never indispensable parties. *See Salton, Inc.*, 391 F.3d at 880 (holding that policy behind joint and severally liability outweighs cloud cast on non-party copyist's work); *Costello Pub. Co.* 670 F.3d at 1043–44 (holding that distributor who had no involvement with creating an infringing work would not be prejudiced by defending the suit without originator of infringing work); *Pujol*, 877 F.3d at 137 (Rule 19 reflects a compromise between the interests served by the federal rules and the policies of tort law).

In any event, it is typical for a clothing designer like New Name to agree to indemnify their customers for any claims of copyright infringement. If this is the case here, New Name's interests would be adequately protected even if it is not a party.[4]

Finally, Plaintiff respectfully requests that the Court rule that New Name is not a necessary party even if it denies Defendants' underlying motion to dismiss. Plaintiff anticipates that Urban Outfitters will be more cooperative in complying with its discovery obligations once it has been disabused of the notion that it can use Rule 19 as an escape hatch where otherwise jurisdiction is proper.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INFRINGERS PROFITS SHOULD BE DENIED PURSUANT TO RULE 56(f) AND BECAUSE OF DISPUTED ISSUES OF MATERIAL FACT

The Court should deny Defendants' motion for summary judgment on infringers profits because the Defendants' woeful discovery production has left Hayuk unable to fully and fairly respond, and because there are material issues of fact even on the limited record before the Court.

To prevail on summary judgment, Defendants must show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(c)(2). "In the context of infringer's profits, the plaintiff must meet only a minimal burden of proof in order to trigger a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement; the burden then shifts to the defendant to demonstrate what portion of its revenues represent profits, and what portion of its profits are not traceable to the infringement." *Data General Corp. v. Grumman Sys. Support Corp.*, 36 F.3d

---

[4] Hayuk seeks discovery from Defendants as to whether such an indemnification agreement exists. *See* Silverstein Decl., Exs. A, B, C, and D. Defendants, however, have not responded to these particular requests.

1147, 1173 (1st Cir. 1994). "If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profit." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.3d 505, 514 (9th Cir. 1985).

When proving costs and overhead, Defendants bear the burden of proving how the claimed overhead actually contributed to the production of the infringing work. *See Frank Music Corp.*, 772 F.3d at 516; *Sammons v. Colonial Press*, 126 F.2d 341, 349 (1st Cir. 1942) ("Overhead which does not assist in the production of the infringement should not be credited to the infringer"). Courts routinely disregard alleged costs and overhead when the infringer only submits evidence of its bottom line, such as Urban Outfitters did here. *See Id.* ("The burden thus cast upon the defendant requires him to give evidence of more than a blanket undifferentiated item of 'overhead'"); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824 (S.D.N.Y 1991) (Because of this lack of specificity as to which or how much of each overhead item contributed to the sale of the infringing items, [defendant] is not allowed to deduct any of its overhead expenses from gross revenue.").

Defendants' reliance on *Segrets, Inc. v. Gillman Knitwear Co., Inc.*, 42 F. Supp. 2d 58 (D. Mass 1998) is misplaced. Far from authorizing Defendants' calculation method, *Segrets* merely stands for the proposition that the Court need not make the plaintiff's arguments *sua sponte* when the plaintiff has not deemed fit to object to the infringer's calculations. *See Segrets*, 42 F. Supp. 2d at 85, n.51 ("Inasmuch as Segrets did not challenge Gillman's approach on the basis that the percentage of infringing sweaters was minuscule in comparison to Gillman's total business, this court will not address this argument *sua sponte*."). *Segrets* certainly does not condone summary judgment before Hayuk has even had an opportunity to take discovery on the facts underlying the bald, bottom line numbers Defendants have presented.

11

### A. The Summary Judgment Motion Should be Denied Pursuant to Rule 56(f) Because Plaintiff Has Not Had a Full and Fair Opportunity to Conduct Discovery

Summary Judgment should be denied pursuant to Rule 56(f) because Defendants' inadequate and incomplete discovery production has left Plaintiff incapable of responding to many of Defendants' alleged undisputed facts.[5] Rule 56(f) is appropriate when a party "can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." *Resolution Trust Corp. v. North Bridge Assoc., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994). To qualify for Rule 56(f), Plaintiff must submit an affidavit showing "(i) good cause for his inability to have discovered or marshaled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion." *Id*. Given the quantum of discovery that needs to be provided before the record is even close to supporting an inquiry into summary judgment, it is appropriate for the Court to deny the present pending motion and allow discovery to proceed pursuant to the Court's long standing discovery rules. *See* Fed. R. Civ. P. Rule 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: deny the motion").

Hayuk has good cause for invoking 56(f) because she has diligently pursued discovery by serving document requests, interrogatories, and by seeking to depose key witnesses for the defense. Indeed, Hayuk would likely have at least some of the discovery she needs but for her good faith granting of Defendants' request to only produce certain responses prior to the

---

[5] In support of her claim to Rule 56(f), Plaintiff relies upon the accompanying declaration of Aaron Silverstein, which authoritatively sets forth the relevant facts. *See Resultion Trust Corp.*, 33 F.3d at 1204 (holding that an attorney affidavit satisfies the affidavit requirement for Rule 56(f).

mediation and Defendants feet dragging with respect to scheduling depositions. *See* Silverstein Decl., ¶¶ 5,7,9. Thus, since Hayuk has diligently approached discovery, she should not be penalized for her willingness to cooperate with Defendants.

Given the documents produced to date, which are only of marginal utility, the incomplete interrogatory responses, and the complete lack of depositions, it is certain (let alone merely plausible) that Plaintiff will uncover additional facts bearing directly on Defendants' profits. In the accompanying Silverstein Declaration, Plaintiff sets forth a number of topics into which discovery is necessary before Plaintiff and the Court can address the topic of damages in any meaningful fashion.

Most striking, Defendants cite to no documents or deposition testimony for the vast majority of Defendants' alleged "undisputed facts," but rather point to self-serving employee declarations that were likely prepared by Defendants' counsel. It is astonishing that Defendants could believe themselves entitled to summary judgment on the strength of this evidence alone when they have actively denied Plaintiff the opportunity to depose these witnesses and have failed to provide the documents on which such opinions are based.

Another area ripe for 56(f) exploration is Defendants' calculations of their costs and overhead because Defendants have produced no discovery that would provide insight, even of a general nature, into what categories of expenditures are included in overhead. Thus, Hayuk has a number of probative and material questions that need to be answered, including but not limited to:

- How many Panic Rainbow t-shirts were sold through Urban Outfitters' online store because overhead for online sales certainly cannot be the same as overhead for brick and mortar sales. *See* Silverstein Decl., ¶ 14.

- Whether the overhead figures each defendant relies upon includes the cost of goods sold, thus leading to double counting this deduction. *See* Silverstein Decl., ¶ 15; *In Design*, 782 F. Supp. at 835 (holding that including the costs of goods sold in overhead would constitute a double deduction).

- Whether the overhead figures include stores that did not carry the Panic Rainbow t-shirt, and therefore should not be included. *See In Design*, 782 F. Supp. at 835 (denying a deduction where overhead was related to opening and modernizing stores that were not related to the infringement).

- Whether the overhead figures include expenses for advertising, as Defendants have admitted the Panic Rainbow t-shirt was not advertised. *See* New Name's and Urban Outfitters' respective responses to Interrogatory No. 5, Wagner Decl., Exs. A, E.

- Whether either defendant has included deductions for debts and investments that have nothing to do with the infringement. *See Sammons*, 126 F.3d at 349 (1st Cir. 1942) ("It is, for instance, not apparent how the items for . . . 'provision for bad debts' assisted in the manufacture of the infringing book.").

- Whether the overhead figures include employee salaries for employee groups (like salesmen) who had no involvement with the infringement.

- Whether the overhead figures include overhead that cannot be deducted because it occurred after Urban Outfitters was put on notice of the infringements.

In summary, Defendants have not produced enough evidence to meet their burden of proving that the claimed costs and overhead relate to their infringement, let alone enough discovery for Hayuk to fully and fairly oppose a motion for summary judgment. Since the record is impoverished through no fault of Hayuk's, and since additional discovery will likely

14

reveal that Defendants' have significantly understated their profits, Hayuk respectfully requests that the Court deny Defendants' motion pursuant to Rule 56(f).

### B. Even Given the Limited Record, There are Material Issues of Fact Precluding Summary Judgment

As shown above, significant discovery needs to take place before the Court can meaningfully address the issue of damages. Even with the limited record before the Court, however, Hayuk is able to identify a number of material issues of fact, each of which are sufficient to defeat summary judgment.

Material Issue of Fact 1: Urban Outfitters Total Sales.

Even with the limited discovery to date, Plaintiff has identified a significant discrepancy with the total sales alleged by Urban Outfitters. Urban Outfitters purchased 22,882 units of the Panic Rainbow t-shirt from New Name. *See* Wagner Decl., Ex. A, Response to Int. 9. The retail price of the Panic Rainbow t-shirt was $28.00. *See* Saunders Decl., Ex. B (D.N. 19-3) (documenting purchase of Panic Rainbow t-shirt at $28.00). Thus, if Urban Outfitters sold its inventory, its gross profits should be $640,696.00. Urban Outfitters, however, claims that it only made $400,000 on the Panic Rainbow t-shirts, yet it has not produced any evidence of returns, discounts, or unsold products to account for this $240,696 discrepancy. Thus, on the record before the Court, Urban Outfitters' gross profits present a material issue of fact that defeats summary judgment.

Material Issue of Fact 2: Defendants Have Not Proven that Overhead Is Related to Infringement

Defendants have not met their factual burden of proving that the costs and overhead they claim is related to the production or sale of the infringing goods. *See Sammons*, 126 F.2d at 349 ("The burden thus cast upon the defendant requires him to give evidence of more than a blanket undifferentiated item of 'overhead'; he must give satisfactory evidence of each item of general

expense or overhead, show that each item assisted in the production of the infringement, and offer a reasonably acceptable formula for allocating a portion of the general overhead to the particular job."). Defendants have not adequately documented or evidenced the categories of expenditures , nor have they presented evidence linking each item with the production or sale of the infringing goods. Indeed, were the court to grant summary judgment on the evidence before it, Defendants failure of proof would result in overhead being disallowed entirely. *See Id.* (disallowing deduction for overhead where claimed categories of expenditures were indeterminate).

Material Issue of Fact 3: Appropriateness of Deductions for Sunk Costs and Income Tax

There is a material issue of fact with respect to whether Defendants are entitled to deduct sunk costs that would have been incurred even if the infringement had never occurred and income tax paid. Hayuk has presented evidence that Defendants' infringement was willful, as they infringed her copyright after she expressly denied Urban Outfitters a license to her artworks. *See* Hayuk Decl. ¶ 4, (D.N. 18). If Defendants' infringement is found to be willful, they would not be entitled to deducted their sunk costs or income tax. *See Sammons*, 126 F.2d at 348 (appropriate to deny deductions for inescapable overhead that would have been borne even without the infringement where infringement is conscious and deliberate); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 566 (2d Cir. 1994) (overruled on other grounds) ("It is settled law that income tax paid on profits is not deductable where infringement was conscious and deliberate.").

### C. Hayuk can Collect Profits from Both New Name and Urban Outfitters

Given the impoverished state of the record, it would be fruitless and futile for Hayuk to address Defendants' proposed method of apportioning overhead, as this is a highly case specific

inquiry. Suffice it to say that Hayuk objects to Defendants' proposed methodology and will substantiate its objections when discovery has been completed.

Defendants' argument, however, that it would somehow be "double dipping" for Hayuk to collect profits from both New Name and Urban Outfitters is incorrect as a matter of law.[6] The infringing t-shirts, which are manufactured for a few dollars, are ultimately sold to the public for $28.00 each. Everything in between is profit, which is split between the manufacturer New Name and the retailer Urban Outfitters. Indeed, Defendants admit as much by the fact that Urban Outfitters seeks to deduct the share of this total profit it paid to New Name. Thus, as a matter of law, Hayuk can collect both Defendants' profits.

## CONCLUSION

For the foregoing reasons, Hayuk respectfully requests that the Court deny with prejudice Defendants' Renewed Motion to Dismiss/Summary Judgment for Lack of Personal Jurisdiction Over an Indispensable Party, as Defendants did not comply with the Courts October 20, 2009 order not to raise this issue again until it had produced discovery. In addition, Hayuk also requests that the Court deny Defendants' Summary Adjudication on Limitation for Award of Damages in the From of Defendants' Profits, and reward Hayuk's attorneys fees pursuant to Rule 56(g).

---

[6] *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923 (N.D. Ill. 2003), the case Defendants' rely upon, does not address the division of profit between co-defendants. Instead, it merely stands for the irrelevant proposition that it would be improper to award both copyright owner's lost profits and the infringers profits when those measures of damages overlap.

Respectfully submitted,

Maya Hayuk

By her attorneys,

Dated: April 15, 2010

<u>/s/Aaron Silverstein</u>
Aaron Silverstein, Esq.
(BBO #660716)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
P: 978-463-9100
F: 978-463-9109
E: asilverstein@massiplaw.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on April, 15, 2010, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.


                                             /s/ Aaron Silverstein
                                             Aaron Silverstein